IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| PEDRO LOPEZ #387082 | § | |
| v. | § | CIVIL ACTION NO. 9:10cv182 |
| LILLIAN THOMAS, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Pedro Lopez, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c).

At an evidentiary hearing and in his complaint, Lopez says that on July 22, 2010, he went into the shower at the Eastham Unit but the picket officer, Lillian Thomas, "was not paying attention to what she was doing." As a result, Thomas closed the shower door and caught Lopez in it. He said that the door caught him in the upper body and left leg, and this forced all of his weight down onto his right leg, on which he had previously had surgery. The officer escorting him was able to get the door open and free him from it.

After this happened, Lopez says, a supervisor was not notified and a report was not made. Instead, he was taken back to his cell. He tried to get help for about an hour and a half, and finally Sgt. Bolton came to see him at shift change. She saw that his leg was swollen, but said that there was nothing she could do because there were no medical personnel available. Instead, she put him on the list to see the doctor the next day.

Lopez stated that when he saw the doctor, an officer whom he identifies as the "chain boss" stated that Lopez was supposed to go to the University of Texas Medical Branch hospital in

Galveston. This was correct; however, Lopez says, the appointment in Galveston was for his eye, not his knee. While he was there, no one would look at his knee.

When he got back, Lopez said that the officers were "surprised" that he had not gone to Galveston for his knee. The doctor looked at his knee and prescribed pain medications and X-rays. After the X-rays, he stated that he was sent back to Galveston for his knee.

Lopez testified that Officer Thomas was the picket officer who had not been paying attention and closed the door on him. He said that Sgt. Bolton had seen that his leg was swollen but told him that no medical personnel were available; however, Lopez stated that she could have ordered that he be sent to the Estelle Unit as an emergency. Lopez stated that Bolton had told him that she could only do this if he was bleeding, which he was not, but indicated that he could have been bleeding internally.

Next, Lopez stated that he had sued Warden Sizemore because "no one teaches the unit employees how to do their jobs." He said that as a warden, Sizemore had the duty to instruct his staff that when there is a need, they have an obligation to get help. He said that he was suing Warden Oliver for the same reason, and also indicated that Warden Oliver had denied his grievance.

Nurse Tara Patton, a correctional nurse who was present at the evidentiary hearing, testified that the Estelle Unit is the regional medical hub which serves the Eastham Unit. She stated that medical staff at the Estelle Unit could be contacted if necessary, and that the medical staff there could order that the patient be seen in the morning, or determine if the patient needs to be transported to obtain medical care. Nurse Patton noted that Lopez's chart showed that the first time that he was seen for his knee was on July 27, five days after his injury, at which time he had a cane and a knee brace; she indicated that he had these prior to the current injury because of pre-existing knee problems. At that time, his knee had minimal swelling. The doctor ordered ibuprofen for pain and X-rays, as well as a front handcuff pass. The X-rays showed metallic staples from a previous surgery and that the patella was high, indicating possible ligament or tendon damage.

Nurse Patton also observed that in administrative segregation, nurses make rounds every day. She said that the showers were run around 10:00 a.m. and the nursing rounds were done around 6 p.m., but there is no indication in the records that Lopez made any complaint to the nursing staff, even though the incident would have occurred prior to the nursing rounds.[1] Nurse Patton confirmed that Lopez had been referred to the Galveston orthopedics department by the doctor, and said that he had arthroscopic surgery and knee reconstruction surgery in April of 2011.

### Lopez's Grievances

In his Step One grievance, Lopez said that Officer Thomas "slammed the shower cell door shut on my right foot," causing his foot to swell up which resulted in great pain. He said that Sgt. Bolton saw how swollen his right foot was, but told him that because the hour was late, there was no medical staff available; she did assure him that he would see the doctor the next day, which was July 23.

On July 23, though, Lopez says that he went on a medical chain for a previous appointment; he thought it was for his foot, but he was wrong. As a result, he was not able to get any medical care for his swollen and injured foot until he returned from the chain on July 27. Sgt. Kitchen saw his swollen and injured foot and that he could not walk on it. Lopez complains that Officer Thomas failed to follow correct procedures when opening the door, and says that she should have been able to see that his foot was in the door. The response to this grievance was that Thomas denied closing the door on Lopez and that Bolton said that Lopez had never complained of having his leg closed in the door, although Lopez did request "non-aspirin" which was provided to him.

In his Step Two appeal of this grievance, Lopez says that Warden Oliver, who answered the Step One grievance, must have been mis-led or that a coverup is occurring, because there were witnesses to the incident. He says that because of his limited English, he did not express himself

---

[1] Lopez's grievances indicate that the incident took place around 10:00 p.m., not 10:00 a.m. The Court will take Lopez's statement to this effect as true, indicating that he was injured after the nursing rounds took place.

well; what actually happened was that Thomas slammed the door on the left side of his body which "in turn slammed the right side of my leg/knee/foot to the other side of the shower door causing serious bodily injury to my right leg/knee/foot." He states that Armstrong and an officer named Nunez witnessed the incident and that Sgt. Bolton saw the swelling but is covering it up because Bolton is aware that proper TDCJ procedures were not followed. Lopez points out that Bolton was called to the cell block for a reason and "it was not to dispense non-aspirins." He says that the hour was late, around 9:50 p.m., and that Bolton was only concerned with getting off work at 10:00 p.m. He states that this is why Bolton told him that there were no medical staff available. Lopez again says that there is a cover-up occurring. The response was that Lopez's grievance had been noted and that the staff has been instructed on the proper procedure for rolling doors. He should contact the medical department if further care is needed. The response concluded by saying that no further investigation is warranted.

Legal Standards and Analysis

At the hearing, Lopez made clear that he believed that Officer Thomas was not paying attention when she closed the door on him. The courts have made clear that a claim of negligence alone is insufficient to state a valid civil rights claim under 42 U.S.C. §1983. The Supreme Court has stated that the Due Process Clause of the Fourteenth Amendment is not implicated by a negligent act of an official causing unintended injury to life, liberty, or property. Daniels v. Williams, 474 U.S. 327, 331-33 (1986). Complaints by prisoners for negligence on the part of prison officials, even where serious injury occurs, do not set out a valid claim under the Civil Rights Act even if such complaints could be valid under state law. See Bowie v. Procunier, 808 F.2d 1142 (5th Cir. 1987). Lopez's claim against Thomas is in effect one for negligence, and so this claim is without merit as a federal cause of action.

Lopez also complains that Thomas and Bolton violated TDCJ procedures in their handling of the incident after it occurred. The Fifth Circuit has stated that a violation of prison rules alone is not sufficient to rise to the standards of a constitutional claim. Myers v. Klevenhagen, 97 F.3d 91,

94 (5th Cir. 1996); Hernandez v. Estelle, 788 F.2d 1154, 1158 (5th Cir. 1986). Even if Thomas and Bolton violated TDCJ rules, regulations, or procedures, this does not itself show a violation of the Constitution. This claim is without merit.

Next, Lopez complains that Sgt. Bolton did not get him medical care. He concedes that there were no medical personnel at the Eastham Unit on duty at that time, but says that Bolton could have made more of an effort to get care for him. Lopez says that Bolton told him that she could only get emergency care if he was bleeding, which he was not, although he says that he could have been "bleeding internally." He acknowledges that Bolton told him that she would put him on a list to see the doctor in the morning and that he did see a doctor in the morning, although he was immediately put on a medical chain for Galveston for a pre-existing eye appointment,

Even if Bolton may have been negligent in failing to get Lopez more prompt medical care, Lopez has failed to show that her actions amounted to deliberate indifference to his medical needs. The Fifth Circuit has explained that deliberate indifference is "an extremely high standard to meet" and requires a showing that the prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs. Domino v. TDCJ-ID, 239 F.3d 752, 756 (5th Cir. 2001). Lopez's pleadings and testimony show that when Bolton looked at his knee, she would have seen only swelling, without evident bleeding. While it may well be true that Bolton could have done more, this does not itself show that she was deliberately indifferent to his needs, rather than merely careless or negligent. The Supreme Court has explained that an official's failure to alleviate a significant risk which she should have perceived, but did not, while "no cause for commendation," cannot be condemned as the infliction of punishment. Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); *see also* Mayweather v. Foti, 958 F.2d 91, 91 (5th Cir. 1992) (the fact that medical care given is "not the best that money can buy" does not amount to deliberate indifference to serious medical needs). His claim against Bolton on this point is without merit.

5

Lopez sues Warden Sizemore and Warden Oliver, saying that they did not instruct their subordinates on how to do their jobs properly. This is in effect a claim of failure to train or supervise.

As a general rule, a plaintiff claiming failure to train or supervise must show (1) an actual failure to train or supervise, (2) a causal connection between this failure and the violation of his rights, and (3) that the failure amounted to gross negligence or deliberate indifference. Doe v. Taylor Independent School District, 15 F.3d 443, 452-53 (5th Cir. 1994); Hinshaw v. Doffer, 785 F.2d 1260, 1263 (5th Cir. 1986); Bowen v. Watkins, 669 F.2d 979, 988 (5th Cir. 1982). This means that absent a supervisor's overt personal participation in the events giving rise to the claim, a plaintiff raising a claim of failure to train must show that the supervisor actually failed to train or supervise the subordinate official, a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights, and that the failure to train or supervise amounted to deliberate indifference. Mesa v. Prejean, 543 F.3d 264, 274 (5th Cir. 2008), *citing* Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). In so holding, the Fifth Circuit stated that proof of deliberate indifference generally requires a showing of more than a single instance of the lack of training or supervision causing a violation of constitutional rights. Mesa, 543 F.3d at 274, *citing* Burge v. St. Tammany Parish, 336 F.3d 363, 370 (5th Cir. 2003).

In this case, Lopez has presented only a single instance of alleged lack of training or supervision, which is insufficient to show a constitutional claim. Furthermore, he has not shown an actual failure to train or supervise, a causal connection between any such failure and a violation of his rights, nor that any such failure amounted to gross negligence or deliberate indifference. The fact that Bolton did not contact medical personnel after seeing that Lopez's knee was swollen, but not bleeding, does not evince a failure to train or supervise by Warden Sizemore or Warden Oliver, nor has Lopez shown that this failure amounted to a violation of his constitutional rights. Lopez has not met the requirements for a failure to train claim and so this claim is without merit.

Finally, Lopez complained that Warden Oliver denied his Step One grievance, and he said in his Step Two appeal of this grievance that the warden "must have been mis-led." The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005); *see also* Edmond v. Martin, et al., slip op. no. 95-60666 (5th Cir., Oct. 2, 1996) (unpublished) (prisoner's claim that a defendant "failed to investigate and denied his grievance" raises no constitutional issue); Thomas v. Lensing, et al., slip op. no. 01-30658 (5th Cir., Dec. 11, 2001) (unpublished) (same). The fact that Warden Oliver did not resolve Lopez's grievance in the manner which Lopez believed most appropriate does not set out a constitutional claim, and so Lopez's claim on this point is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Lopez's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted in federal court. Consequently, his lawsuit may be dismissed as

frivolous under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED as frivolous with prejudice as to its refiling in federal court, but without prejudice as to any state-law claims which Lopez may raise in the courts of the State of Texas. 28 U.S.C. §1915A. It is further

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED. Finally, it is

ORDERED that the Clerk shall send a copy of this opinion to the Administrator of the Strikes list for the Eastern District of Texas.

So **ORDERED** and **SIGNED** this **2** day of **February, 2012.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE